46261. SMITH et al. v. SINGLETON et al.

JORDAN, Presiding Judge. Kenneth L. Singleton and Jimmy W. Singleton, the assignees and successors of a partnership d/b/a Rome Tractor Company, commenced this action to recover from Fred B. Smith, Jr., and Hugh Keown, the alleged unpaid balance of $7,322.48 due on a promissory note, payable in instalments, for the sale of a skidder, $917.37 for repairs in preparation for resale, and $1,098.37 in attorney's fees. They amended the claim to allow a credit of $7,000 realized from resale and reduced the claim to $322.48 on the note, $917.37 for repairs, and $148.90 in attorney's fees, for a total of $1,388.75. The jury found for the plaintiffs in this amount, and the defendants appeal from the judgment thereon. *Held:*

1. Copies of the notices sent to the debtors by certified mail dated November 12, 1969, advising them of an intention to dispose of the collateral after November 28, 1969, affording them an opportunity to redeem the collateral, and advising them of liability for any deficiency after sale, disclose a compliance with *Code Ann.* § 109A-9—504 (3) requiring "reasonable notification of the time after which any private sale . . . is to be made" and were properly received in evidence for this purpose, and no basis is shown to support a contention of accord and satisfaction by reason of insufficient notice of the sale of the collateral, or instructions to the jury in this respect. See *Steelman v. Associates Discount Corp.,* 121 Ga. App. 649 (3) (175 SE2d 62), involving notice of sale under a motor vehicle contract antedating the Motor Vehicle Sales Finance Act. The cases cited by the defendant (*Moody v. Nides Finance Co.,* 115 Ga. App. 859 (156 SE2d 310), and *Braswell v. American Nat. Bank,* 117 Ga. App. 699 (161 SE2d 420)) are clearly distinguishable on their facts.

2. On the security instrument Keown's signature appears as that of an unqualified co-maker. It is undisputed from the evidence that in fact the original transferee would not approve Smith alone as a credit risk, and refused to accept the contract unless it bore the signature of another person deemed to be an acceptable credit risk, and that for this reason Keown signed the contract after the transaction was otherwise completed. The

defendants contend that Keown is actually a guarantor and that any action must be brought in Gordon County, where Smith resides, instead of Floyd County, where Keown resides. *Code Ann.* § 109A-3—416, purporting to define the contract of a guarantor, is, by its express language, confined to situations where some writing appears on the instrument to disclose a contract of guaranty. "It states the commercial understanding as to the meaning and effect of *words of guaranty added to a signature."* (Emphasis supplied). UCC, 1962 Official Text with Comments, The American Law Institute and National Conference of Commissioner on Uniform State Laws, p. 310. Here there is no writing of such import "added to a signature." That in some cases "the accommodation character may be shown by oral proof" (*Code Ann.* § 109A-3—415 (3)) is also no authority for the broad assertion that the signer may show by oral testimony any capacity in which he signed. Instead, what is admissible is "parol evidence to prove that the party has signed for accommodation." UCC, 1962 Official Text with Comments, supra, p. 309. Here there is no dispute as to the fact that Keown signed as an accommodation party. In our opinion, conceding that he signed as an accommodation party, his liability is determined by the capacity in which he signed as shown on the instrument. See *Code Ann.* § 109A-3—415 (2).

3. There is no merit in the contention that the Singletons were not the real parties in interest when the action was commenced, or that the court erred in allowing in evidence a formal written assignment to the plaintiffs purportedly made subsequent to the filing of the action. CPA § 17 as amended; Ga. L. 1968, pp. 1104, 1107 (*Code Ann.* § 81A-117 (a)), clearly precludes dismissal until a reasonable time is allowed after objection to show the real party by ratification, joinder, or substitution, which, as shown, "shall have the same effect as if the action had been commenced in the name of the real party in interest." The evidence of the formal assignment merely shows ratification of a situation which in fact already existed, i.e., that the plaintiffs were in possession of the instrument and could proceed as holders in their own names. See *Code Ann.* §§ 109A-3—301, 109A-3—306.

4. The testimony of the defendant Smith, to the effect that he had a "heart attack" some months after he had surrendered possession of the skidder, further explained by his physician as in reality angina pectoris which "can be brought on by a lot of things, cigarettes and tobacco, overwork, worry, emotional upset. Getting mad can bring it on. That is one of the worst things that can bring it on" etc., which counsel stated "is all we expect to produce" to support a counterclaim pleaded on the theory that Smith "was stricken with a heart attack being angina pectoris, all resulting from stress and tension worrying with this equipment trying to get it repaired as contemplated in the original delivery price," etc., is in our opinion insufficient to warrant submission of the counterclaim to the jury. The ruling of the trial court in eliminating the counterclaim, and related matters complained of, discloses no harmful error. There is a total absence of any proof or offer of proof to disclose any wrongful or illegal conduct by the plaintiffs as the proximate cause of any injury or loss by the defendant Smith.

5. Despite logical arguments to the contrary, it is settled law in this State that the usury statutes are inapplicable to a retail instalment contract as here shown, which included a stated "Finance Charge" or "Time Charge" or "Time Price Diff." added to the cash balance to arrive at a "Time Balance" payable in monthly instalments. See *Richardson v. C. I. T. Corp.,* 60 Ga. App. 780 (5 SE2d 250). We also note that the Retail Instalment and Home Solicitation Sales Act and the Motor Vehicle Sales Finance Act (Ga. L. 1967, pp. 659, 674, as amended; *Code Ann. Chs.* 96-9, 96-10) are inapplicable to the sale of the equipment here shown although these statutes cover substantially identical transactions involving something for personal, family, or household use, or motor vehicles for use on public streets and highways, and pre-empt other general law.

6. The remaining contentions are without merit. The evidence authorized the verdict and judgment, and no harmful error appears for any reason argued and insisted upon.

*Judgment affirmed. Quillian and Evans, JJ., concur.*

SUBMITTED JUNE 2, 1971—DECIDED SEPTEMBER 8, 1971.

*Covington, Kilpatrick & Storey, J. S. Kilpatrick,* for appellants.
*E. J. Clower,* for appellees.